[Cite as *In re D.R.*, 2014-Ohio-588.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: D.R., A MINOR CHILD | : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. Sheila G. Farmer, J.<br>Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 13CA27 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Knox County Court of
                             Common Pleas, Juvenile Division, Case
                             No. 2121029

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 14, 2014

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

JOHN THATCHER                            CHARLYN BOHLAND
Knox County Prosecutor                   Assistant State Public Defender
By: JOSEPH D. SAKS                       250 East Broad Street, Ste. 1400
Assistant Prosecutor                     Columbus, OH 43215
117 East High Street, Ste. 234
Mt. Vernon, OH 43050

*Gwin, P.J.*

**{¶1}** On January 30, 2012, a Knox County Juvenile Court complaint alleged that then 14-year old D.R.[1] was a delinquent child for committing rape, a violation of R.C. 2907.02 (A)(1)(b), a first-degree felony if committed by an adult. D.R. admitted to the offense and was adjudicated delinquent by Judgment Entry filed March 23, 2012. By Judgment Entry filed April 26, 2012, the juvenile court committed D.R. to the Ohio Department of Youth Services (DYS) for a minimum period of one year, maximum to her twenty-first birthday.

**{¶2}** On May 15, 2013, two weeks before she was to be released from DYS, the state requested that the juvenile court hold a discretionary classification hearing. In response, D.R. filed a memorandum in opposition to classification, asserting that her classification violated the Double Jeopardy Clause and that her successful treatment history in DYS warranted no classification order.

**{¶3}** On June 3, 2013, D.R. was released from DYS and placed at the Marsh Foundation. On July 29, 2013, after hearing arguments from counsel, the juvenile court classified D.R. as a tier I juvenile offender registrant with a duty to register once per year for a period of ten years.

*Assignments of Error*

**{¶4}** It is from the trial court's August 5, 2013 Judgment Entry classifying D.R. as a tier I juvenile offender registrant with a duty to register once per year for a period of ten years that D.R. has appealed raising two assignments of error,

---

[1] Counsel should adhere to Sup.R. 44(2)(d) and 45(D) concerning disclosure of personal identifiers. See also Juv.R. 5.

{¶5} "I. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED [D.R.] AS A TIER I JUVENILE OFFENDER REGISTRANT BECAUSE THE CLASSIFICATION PERIOD EXTENDS BEYOND THE AGE JURISDICTION OF THE JUVENILE COURT, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 9 AND 16 OF THE OHIO CONSTITUTION.

{¶6} "II. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED [D.R.] AFTER HER INITIAL DISPOSITION, IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I.

{¶7} In her first assignment of error, D.R. contends that the juvenile court erred by classifying her as a tier I juvenile offender registrant ("JOR") where the classification period extended beyond her twenty-first birthday. This classification, D.R. argues, violates the prohibitions against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 16.

**Jurisdiction of Juvenile Court**

{¶8} D.R. first contends that three statutes, R.C. 2152.83(E), 2152.84, and 2152.85 are unconstitutional because they extend the jurisdiction of the juvenile court over her past twenty-first birthday, which is the age at which the jurisdiction of the juvenile court ends for most dispositions. *See* R.C. 2152.22(A).

{¶9} R.C. 2152.22(A) limits the duration of most post-adjudication dispositional orders to the juvenile's twenty-first birthday. However, the statute explicitly states that certain types of dispositional orders may extend past the age of twenty-one. R.C. 2152.22(A). One type of dispositional order that may extend past the age of twenty-one is an order for a juvenile to register as a JOR under 2152.83(B).

{¶10} The Legislature, in the exercise of its police power, in order to protect children and to remove them from evil influences, has established the juvenile court. *Children's Home of Marion Cty. v. Fetter*, 90 Ohio St. 110, 127, 106 N.E. 761(1914). In *State ex rel. Schwartz v. Haines*, the Ohio Supreme Court noted,

> The Juvenile Court has exclusive original jurisdiction over delinquent minors. (This power is derived from Section 1, Article IV of the Constitution of Ohio, and the court is established and its jurisdiction defined by Chapter 2151, Revised Code, and Section 2151.23, Revised Code, provides exclusive original jurisdiction over delinquent minors.)

172 Ohio St. 572, 573, 179 N.E. 46(1962). In Ohio, juvenile courts are creatures of statute with limited jurisdiction set by the General Assembly. *See In re Agler,* 19 Ohio St.2d 70, 72–74, 249 N.E.2d 808 (1969); *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶26 (McGee Brown, J., concurring). The legislature retains the power to define the jurisdiction of the courts as long as powers inherently reserved for the judiciary are not infringed upon. *Seventh Urban, Inc. v. University Circle*, 67 Ohio St.2d 19, 423 N.E.2d 1070(1981). Both R.C. 2152.22(A) and R.C. 2152.83(E) specifically exempt sex offender classification proceedings from the general rule that dispositions end when the juvenile turns 21. *In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-

157, ¶38. The General Assembly has by enacting R.C. 2152.83(E) extended the jurisdiction of the juvenile court to classifications extending beyond the child's twenty-first birthday.

**Cruel and Unusual Punishment**

{¶11} D.R. next contends that imposition of a classification period that extends beyond the age of twenty-one violates a child's due process rights and constitutes cruel and unusual punishment.

{¶12} Initially we note a deficiency in D.R.'s appellate brief; it does not comply with App.R.16 (A)(7), which provides,

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

{¶13} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon,* 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, at ¶14, *quoting State v. Carman,* 8th Dist. Cuyahoga No. 90512, 2008-Ohio-4368, at ¶31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell,* 9th Dist. Summit No. 24184, 2009-Ohio-1211, at ¶16, *quoting Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006(9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error

that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194, at ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright,* 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, at ¶16; *Tally v. Patrick,* 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone,* 9th Dist. Summit No. 23904, 2008-Ohio-3313, at ¶23; *State v. Paulsen*, 4th Dist. Hocking Nos. 09CA15, 09CA16, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Dist. Guernsey No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. Muskingum No. CT20060005, 2007 WL 1122731, ¶141.

{¶14} According to App. R. 12(A) (2), "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶15} In the case at bar, D.R. has wholly failed to provide any explanation concerning the legal reasons in support of her argument that the classification in the case at bar constitutes cruel and unusual punishment in violation of either the Ohio or the United States constitutions.

**Due Process**

{¶16} In support of her due process claims, D.R. contends that the registrations requirements extending past the child's twenty-first birthday are punitive and do not comport with the rehabilitative purposes of the juvenile court system.

{¶17} "Constitutional procedural safeguards in the juvenile context find their genesis in the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 44. "Due process standards as they relate to juvenile proceedings are inexact; this court has held that "fundamental fairness is the overarching concern." Id. at ¶ 51; *In re C.P.*, 131 Ohio St.3d 513, 2012–Ohio–1446, 967 N.E.2d 729, ¶71.

{¶18} A sex offender includes a person who has been adjudicated a delinquent child for committing any sexually oriented offense. R.C. 2950.01(B)(1). There are three tiers of sex offenders, with tier I being the least severe and tier III being the most severe. See, *In re Q.R.*, 7th Dist. Belmont No. 11 BE 30, 2012-Ohio-4210, ¶9. Rape is a sexually oriented offense. R.C. 2950.01(A)(1), citing R.C. 2907.02. Rape in violation of R.C. 2907.02 falls under tier III automatically for adults. R.C. 2950.01(G)(1).

{¶19} The juvenile court must determine if the juvenile should be classified as a JOR and thus required to register under R.C. 2950.04 through 2950.06. A JOR classification in this case at bar was discretionary because D.R. was fourteen at the time of committing the offense and because the court was not required to classify the child as a JOR under R.C. 2152.82 (involving a juvenile with a prior adjudication for a sexually oriented offense) or as a public registry-qualified juvenile offender registrant

(PRQJOR) under R.C. 2152.86 (dealing with a juvenile who commits certain crimes and is labeled a serious youthful offender). See R.C. 2152.83(B)(1). *In re Q.R.*,¶ 11.

**{¶20}** In *In re Q.R.*, the Court of Appeals for the Seventh District observed,

> After a hearing and consideration of all of the relevant factors, the judge must declare whether a JOR classification, and thus registration, should be imposed, and if so, under what tier the JOR should be classified. See R.C. 2152.83(B)(2)(b), (C)(1); R.C. 2152.831(B). A JOR must register his address with the sheriff every year if he is classified in tier I, every 180 days if he is classified in tier II, and every ninety days if he is classified in tier III. R.C. 2950.06(B)(1)-(3). The registration obligation lasts for ten years for those classified in tier I, for twenty years for those classified in tier II, and for life for those classified in tier III. R.C. 2950.07(B)(1)-(3). It is only when the judge chooses tier III that he may then choose to impose community notification, which lasts for life unless eliminated as explained below. See R.C. 2152.83(C)(2).

> At the completion of the child's disposition, a judge can terminate the child's prior disposition as a JOR or can issue a downward modification of the prior tier classification. R.C. 2152.84(A)(1), (2)(b), (c). Thereafter, a JOR (who is not a PRQJOR) can petition the court every three years to seek modification or termination of the order. R.C. 2152.84(D); R.C. 2152.85(A)(1), (B)(1)-(2).

*In re Q.R.*, 2012-Ohio-4210, ¶16-¶17.

**{¶21}** In the case at bar, D.R.'s hearing was conducted at the time of her release from a secured facility pursuant to R.C. 2152.83(B)(1). See, Motion for Classification Hearing, filed May 15, 2013. R.C. 2152.83 provides,

(B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:

(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

(b) The child was fourteen or fifteen years of age at the time of committing the offense.

(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

(2) A judge shall conduct a hearing under division (B)(1) of this section to review the effectiveness of the disposition made of the child and of any treatment provided for the child placed in a secure setting and to determine whether the child should be classified a juvenile offender registrant. The judge may conduct the hearing on the judge's own initiative

or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the court, or a prosecutor or law enforcement officer. If the judge conducts the hearing, upon completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:

(a) Decline to issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code;

(b) Issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and that states the determination that the judge makes at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender.

(C)(1) Prior to issuing an order under division (B)(2)(b) of this section , the judge shall conduct a hearing under section 2152.831 of the Revised Code to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender. The judge may hold the hearing at the same time as the hearing under division (B) of this section.

{¶22} In making this determination, the juvenile court is required to consider all relevant factors, including, but not limited to: (1) the nature of the sexually-oriented offense or the child-victim oriented offense; (2) whether the offender has shown genuine remorse or compunction for the offense; (3) the public interest and safety; (4) the factors set forth in R.C. 2950.11(K); (5) the relevant factors set forth in R.C. 2929.12(B) and (C) (2) and (6) the results of any treatment provided to the offender and any follow-up professional assessment. R.C. 2152.83(D)(1)-(6). See also R.C. 2152.83(B)(2); R.C. 2152.831(A). *In re Q.R.*, ¶ 12.

{¶23} In the case at bar, after the hearing conducted on July 29, 2013, the trial court chose to classify D.R. as a tier I JOR, which requires D.R. to register once each year for a period of ten years. R.C. 2950.06(B)(1). A tier I JOR is not subject to victim or community notification requirements. R.C. 2950.10; R.C. 2950.11. Further, tier I JOR's are not subject to publication in an Internet database. See, R.C. 2950.13(A)(11).

{¶24} The Ohio Supreme Court held in *In re C.P.*, 131 Ohio St.3d 513, 2012–Ohio–1446, 967 N.E.2d 729, that R.C. 2152.86 violates procedural due process because it automatically imposes lifelong registration and notification requirements on a certain class of juvenile sex offenders called public-registry-qualified juvenile-offender registrants.["PRQJOR"] *In re C.P.*, ¶86. Pursuant to R.C. 2152.86, juveniles are public-registry-qualified juvenile-offender registrants if they (1) were 14 through 17 years old when the offense was committed, (2) have been adjudicated a delinquent child for committing certain specified sexually-oriented offenses, and (3) have had a court impose on them a serious youthful offender dispositional sentence. *Id.* at ¶13. These offenders are to be classified under tier III. *Id.* at ¶ 85–86. Therefore, the offenders "are

automatically subject to mandatory, lifetime sex-offender registration and notification requirements" because they are automatically labeled tier III offenders *Id.* at ¶1. The court held that R.C. 2152.86 violated the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment because it "imposes automatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system." *Id.* at syllabus. The court contrasted R.C. 2152.86 with sex offender classifications made "through a traditional juvenile disposition," which provides the trial court with more discretion in the imposition of the reporting and registration requirements because "the court holds a hearing to determine [the offender's] tier classification." *Id.* at ¶ 20. *See*, *In re M.C.*, 10th Dist. Franklin No. 12AP-618, 2013-Ohio-2109*, ¶ 79.

{¶25} In the case at bar, the classification of D.R. as a juvenile offender registrant was not mandatory under the circumstances of this case because D.R. was 14 years old at the time of the offense, did not have a prior adjudication for a sexually oriented offense, and had not been labeled a serious youthful offender. See R.C. 2152.83(B)(1), R.C. 2152.82, and R.C. 2152.86. As classification was not mandated by statute, the juvenile court was given the broad discretion to determine whether D.R. should be classified as a juvenile offender registrant and under which tier D.R. should be placed. *In re C.P.,* 131 Ohio St.3d 513, 2012–Ohio–1446, ¶20 (which tier such an offender is placed in rests within the juvenile court's discretion); *In re Q.J.,* 7th Dist. Belmont No. 11 BE 30, 2012–Ohio–4210, ¶10. *See also* R.C. 2950.01(E)(3), (F)(3), (G)(3); R.C. 2152.83(B)(2)(b); R.C. 2152.83(C)(1). *See*, *In re K.D.H.*, 12th Dist. No.

CA2012-09-188, 2013-Ohio-2636, ¶8. In this case, an original classification hearing was held within the permissible period.

**{¶26}** Laws limiting rights, other than fundamental rights, are constitutional with respect to substantive due process and equal protection if the laws are rationally related to a legitimate goal of government. *See State v. Thompkins*, 75 Ohio St.3d 558, 560– 561, 664 N.E.2d 926(1996). The Court of Appeals for the First District has addressed D.R.'s argument,

> Raheem cites no case law that recognizes the fundamental right of a child to avoid punishment for delinquency that extends beyond the child's 21st birthday. Moreover, he provides no basis for us to say that such a right is deeply rooted in our nation's history and tradition. Since their inception, the juvenile courts have constantly evolved as policymakers and courts have grappled with "the inherent tension * * * between the goals of rehabilitation and the protection of society." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 75. We believe that tying a fundamental right to this moving target would be unwise. Further, we note that on two recent occasions, the Ohio Supreme Court has upheld various aspects of the blended-sentencing framework, which incorporates prison terms for delinquency that are served beyond the child's 21st birthday. *See State v. D.H., supra*; In *re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203. We, therefore, conclude that no fundamental right has been implicated in this case.

We turn then to whether such punishment is rationally related to a legitimate government interest. The General Assembly has provided that the overriding purposes for juvenile-court dispositions are "to provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01. Although the Ohio Supreme Court has stressed the importance of rehabilitation in the juvenile-court system, it has also recognized that the state has "valid interests in enforcing its criminal laws against juveniles and, in at least some cases, in requesting that the juvenile court impose significant penalties in their dispositions * * *." *In re C.S.* at ¶ 77. With this in mind, together with our highly-deferential standard of review, we cannot say that the punishment authorized by R.C. 2152.83(A) is irrational.

*In re Raheem L.*, 1st Dist. Hamilton No. C-100608, 2013-Ohio-2423, 993 N.E.2d 455, ¶¶ 9-10.

**{¶27}** In the case at bar, we cannot say that the classification authorized by R.C. 2152.83(B) is irrational. Pursuant to R.C. 2152.83(B), the juvenile court judge retains discretion to deal individually with juvenile offenders. *In re C.P.,* ¶82. "Fundamental fairness requires that the judge decide the appropriateness of any such penalty." Id. at ¶78. Although imposition of R.C. 2152.83(B) registration requirements may be punitive, they may help achieve the goal of rehabilitation by motivating the juvenile to comply with

treatment in order to reduce or eliminate the registration requirement. *In re I.A.*, 2nd Dist. Montgomery No. 25078, 2012-Ohio-4973, *2.

**{¶28}** Accordingly, D.R. has failed to show that a JOR classification that extends beyond a child's twenty-first birthday violate either the United States or Ohio constitutional prohibitions against cruel and unusual punishment or the requirements of due process.

**{¶29}** D.R.'s first assignment of error is overruled.

II.

**{¶30}** In her second assignment of error, D. R. contends that the juvenile court erred by classifying D.R. upon release from a secure facility rather than at the time of disposition. Classifying a juvenile at any time other than disposition, D.R. argues, violates the Double Jeopardy Clause of the Fourteenth Amendment to the United States Constitution, by imposing multiple criminal punishments for the same offense in successive proceedings.

**{¶31}** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect criminal defendants against multiple prosecutions for the same offense. The Ohio Supreme Court has recognized that "[t]he protections afforded by the two Double Jeopardy Clauses are coextensive." *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7, *citing State v. Gustafson*, 76 Ohio St.3d 425, 432, 668 N.E.2d 435(1996).

**{¶32}** The principle behind the Double Jeopardy Clause "'is that the State with all its resources and power should not be allowed to make repeated attempts to convict

an individual for the alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'" *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, 893 N.E.2d 818, ¶11, *quoting Green v. United States*, 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199(1957). The federal and state constitutions' double jeopardy protection further guards citizens against cumulative punishments for the "same offense." *State v. Moss*, 69 Ohio St.2d 515, 518, 433 N.E.2d 181(1982). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542(1983). *See, also, Moss*, 69 Ohio St.2d at 518, 433 N.E.2d at 184-185. In *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425(1984), the United States Supreme Court stated:

> " * * * Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger*, 5 Wheat. 76, 93, 5 L.Ed. 37 (1820), the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent, see *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). * * * "

**{¶33}** The Double Jeopardy Clause of the federal constitution "protects only against the imposition of multiple criminal punishments for the same offense, * * * and then only when such occurs in successive proceedings." (Citations omitted.) *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488 (1997); *State v. Raber,* 134 Ohio St.3d

350, 2012–Ohio–5636, 982 N.E.2d 684, ¶24; *State v. Martello*, 97 Ohio St.3d 398, 2002–Ohio–6661, ¶8. "If pursued in a single proceeding, * * * multiple punishment may constitutionally be imposed [.]" *State v. Gustafson*, 76 Ohio St.3d 425, 437, 668 N.E.2d 435(1996).

**{¶34}** D.R. relies primarily on *State v. Raber* in which the Ohio Supreme Court held that the trial court lacked authority to re-open sentencing to classify the defendant a sex offender more than one year after it imposed its original sentence. 134 Ohio St.3d 350, 2012–Ohio–5636, 982 N.E.2d 684, ¶4. The Supreme Court further stated, "Because sex-offender registration is now punitive in nature, double-jeopardy protections barred the court from subsequently classifying Raber as a Tier I sex offender at a new proceeding held more than a year after its original sentence." Id.

**{¶35}** However, in the case at bar, the court's ability to classify D.R. arose from the clause of R.C. 2152.83(B) (1) granting the court jurisdiction to issue an order classifying D.R. as part of the dispositional order. *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶24. In *Jean-Baptiste,* Jean-Baptiste was released from custody on January 18, 2010, which was also the date of his 21st birthday. Id. ¶5. However, the JOR classification hearing did not occur until February 8, 2010. Id. In *Jean-Baptiste*, the Supreme Court observed,

> Because Jean–Baptiste was adjudicated a delinquent child and was committed to a secure facility, the statute [R.C. 2152.83(A)(1)] is clear that the court must issue the order classifying the child as a juvenile-offender registrant at the time the child is released from the secure facility—not afterward. The statute is logical, given that the juvenile-

offender registrant may be subject to certain registration requirements upon his or her release into the community. Because Jean–Baptiste was released on the day that he turned 21 and because R.C. 2152.83 specifies that classification must occur when a child is released from a secure facility, the juvenile court patently and unambiguously lacks jurisdiction to classify Jean–Baptiste after his 21st birthday, when he was no longer a child.

Id., ¶28. In the case at bar, D.R. had not attained the age of 21 at the time of the classification and was therefore still subject to the jurisdiction of the juvenile court. Like R.C. 2152.83(A)(1), the statute by which D.R.'s hearing was held in the case at bar, R.C. 2152.83(B), provides that the court may issue the order classifying the child as a JOR at the time the child is released from the secured facility. This Court found the classification process was not a new proceeding but rather a continuation of the original delinquency case. *In re B.D.,* 5th Dist Guernsey No. 11-CA-27, 2012-Ohio-2223, 970 N.E.2d 1178, ¶ 15.[2] Accordingly, multiple punishments have not been imposed in D.R.'s case in subsequent proceedings.

---

[2] We note the Ohio Supreme Court has recognized a split between appellate districts on when the classification hearing must occur and has certified the following question: "If a court commits a child to a secure facility, does R.C. 2152.83(B)(1) permit the court to conduct a classification hearing at the time of disposition?" *In re I.A.,* 134 Ohio St.3d 1447, 2013-Ohio-347, 982 N.E.2d 726.

**{¶36}** D.R.'s second assignment of error is overruled.

**{¶37}** For the foregoing reasons the judgment of the Knox County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur